IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Erma S. Dodd d/b/a Fort Pitt Motel   :
   :
       v.                 :  No. 1470 C.D. 2017
   :  ARGUED:  May 7, 2019
County of Allegheny, Office of    :
Treasurer,                      :
             Appellant    :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                       FILED:  August 1, 2019

The Allegheny County (County) Office of Treasurer (Treasurer) appeals from the September 21, 2017 order of the Court of Common Pleas of Allegheny County (trial court) which granted the tax appeal of Erma S. Dodd (Dodd), d/b/a Fort Pitt Motel (Motel). The trial court concluded that one of the Motel's patrons, Equipment Transport (ET), was a permanent resident of the Motel such that its room rentals were tax-exempt.  After thorough review, we vacate the trial court's order and remand for further proceedings.

## I. Background

The Motel is located at 7750 Steubenville Pike, Oakdale, Allegheny County, Pennsylvania.  Notes of Testimony (N.T.), 4/14/15, Ex. No. 1.  The County imposes a seven-percent Hotel Tax on the gross sales of hotel room rentals.  N.T., 5/17/17, at 22.  A hotel operator must file with the Treasurer a tax return indicating the amount

of Hotel Tax due and must remit the taxes owed. Allegheny County, Pa., Ordinance div. 4, chapter 475, § 475-8(D). If a hotel operator fails to collect or remit the Hotel Tax, the Treasurer may conduct an investigation to determine and assess the amount of Hotel Tax due, plus penalties and interest. *Id.*, Section 475-8(E).

The County Ordinance presumes that all rooms are subject to the Hotel Tax unless established otherwise by the accurate records of the hotel operator. *Id.*, Section 475-8(G)(1). However, a person who has rented a hotel room, or had the right to occupy that room, for more than 30 consecutive days is considered a permanent resident no longer subject to the Hotel Tax. *Id.*, Section 475-8(B). This rental period is established by the terms of a contract under which the occupant is legally bound to pay rent in exchange for a continuous right to occupy a room or rooms at the hotel. *Id.* A mere statement of intention to occupy, or intention by a hotel operator to permit occupancy, does not create a rental period unless the period in question is the subject of a legally enforceable contract. *Id.* For those instances in which an exemption to the Hotel Tax is claimed, the hotel operator must maintain among her records folios, lease agreements, and vouchers. *Id.*, Section 475-8(G)(3). If a hotel operator fails to maintain adequate records as required by the Ordinance, any room for which adequate records do not exist shall be deemed to have been occupied for that entire period. *Id.*, Section 475-8(G)(1). The operator of the establishment claiming an exemption bears the burden of proving any consideration received is not taxable. *Id.*

In April 2014, the County Controller (Controller), notified Dodd that the County wished to review the Motel's room rental records for purposes of determining whether the correct amount of Hotel Tax had been submitted for the period of January 1, 2010 through March 31, 2014. N.T., 4/14/15, Ex. No. 1. Dodd

2

was asked to make available for the Controller's staff copies of the Motel's room rate schedule, sales and cash receipts journals, folios, exemption lists and supporting documentation, a general ledger, and bank deposit slips and statements if no general ledger was available. *Id.* A review of the Motel's records originally scheduled for July 14, 2014, was rescheduled multiple times upon the request of Theresa Harrington (Harrington), the Motel's manager. *Id.*, Ex. Nos. 2-6. By letter dated January 7, 2015, the Controller informed Dodd that if the records required to perform the review were not provided, the County would assess the Hotel Tax based on the Motel's full occupancy. *Id.*, Ex. No. 6.

A review of the Motel's records took place on January 26, 2015, but the records required to properly assess the appropriate amount of Hotel Tax were not provided. *Id.*, Ex. No. 8 at 2. Consequently, the Motel was assessed at full occupancy for the period of April 1, 2011 through September 30, 2014. *Id.* The total amount of the Hotel Tax assessed, with penalties and interest, was $337,458.44. *Id.* at 2-3. Harrington requested a hearing concerning the amount of tax owed. *Id.*, Ex. No. 12.

### A. Arbitrator's Hearing

A hearing before a neutral arbitrator was held in April 2015. Dodd appeared *pro se.* The Treasurer presented the testimony of Bethany Neal, an audit manager with the Controller's Office (Auditor 1).

Dodd acknowledged that she owed taxes for the Motel, however, she was unsure as to the amount owed. N.T., 4/14/15 Arbitration Hearing, at 7. Dodd asserted that most of the Motel's rooms were rented by the month and she had an agreement with ET to house its employees on a long-term basis. *Id.* at 10, 67. In support of this assertion, Dodd produced the Motel's tax exemption statements for

3

the periods July 1, 2013 through December 31, 2013 and July 1, 2014 through September 30, 2014. *Id.*, Ex. A. These records indicated the names and addresses of occupants of the Motel, the prices charged to those individuals, and the months of their occupancy. *Id.*

Auditor 1 testified that the Treasurer engaged her office to review the Motel's records for purposes of determining whether any Hotel Tax was due. *Id.* at 17. The review was initially scheduled for July 14, 2014, but postponed three times by request of Harrington. *Id.* at 24. Ultimately, the review was scheduled for January 26, 2015, however, when staff members from the Controller's Office arrived at the Motel that day, Harrington advised them she needed additional time to obtain the necessary records. *Id.* at 25-26. As no records were provided on the date scheduled for the review, Auditor 1 calculated the amount of Hotel Tax owed based on full occupancy of the rooms from April 1, 2011 through September 30, 2014, at the rates set forth in the Motel's hotel registration form on file with the Treasurer. *Id.* at 29-30. With penalties and interest, she determined the Motel owed a total of $337,458.44 in Hotel Tax. *Id.* at 30.

Regarding Dodd's claim for an exemption from the payment of the Hotel Tax, Auditor 1 testified that a hotel's tax exemption statement was only a "starting point" that must be corroborated by other records, such as receipts and folios, to establish an exemption from the Hotel Tax. *Id.* at 70-71. Exemptions for permanent residents require contracts evidencing intent to stay at the hotel for 30 or more days, as well as records to substantiate occupancy for that period. *Id.* at 72.

The arbitrator upheld the Treasurer's imposition of Hotel Tax in the amount of $337,458.44, including interest and penalties. Dodd appealed to the trial court, which reversed the arbitrator's decision and remanded the matter to the Treasurer

4

and Controller for a second examination of the Motel's records. Reproduced Record (R.R.) at 153a. Dodd was directed to assemble and produce the Motel's records for the relevant time period. *Id.* After the second review, the Controller determined the Motel owed $45,396.30 in unpaid Hotel Tax, including penalties and interest. *Id.* at 162a. Dodd appealed this second determination to the trial court.

### B. *De novo* Trial

A non-jury trial was held by the trial court on May 17, 2017 and May 25, 2017. Dodd and Harrington testified on behalf of the Motel. Dodd also presented the May 19, 2017 deposition testimony of Jeffrey Kendall (Kendall), a former employee of ET. The Treasurer presented the testimony of Auditor 1, Michael Mohring, a manager with the Treasurer's Special Tax Division (Tax Manager), and Lauren Myers, an auditor with the Controller's Office (Auditor 2).

### 1. Motel's Evidence

Dodd testified she had an agreement with ET to rent several of the Motel's rooms for at least one year. N.T., 5/17/17, at 178-79. She could not recall the exact number of rooms guaranteed to ET. *Id.* at 178. The rooms were committed to ET but if ET did not need one of the rooms, Dodd could rent it to another patron. *Id.* at 179. ET was obligated to pay for rooms whether or not they were occupied, but Dodd would occasionally waive payment for rooms ET did not need. *Id.* at 179-80.

Dodd asserted that the entire period during which ET had the right to occupy the Motel's rooms was exempt from the Hotel Tax. *Id.* at 184. She acknowledged, however, that the Motel owed Hotel Tax for rooms rented to other patrons. *Id.* at 200. By her calculations, that amount was $12,527.40, including interest. *Id.*, Ex. A.

5

Dodd could not recall whether ET paid for its rooms by check or credit card. N.T., 5/25/17, at 241. While she had two bank accounts in her name, revenue from the Motel was not deposited in either account. *Id.* at 243. Dodd was unsure whether the Motel had its own bank account. *Id.* She admitted that, outside of the handwritten ledger sheets she provided to the Controller, there was no way for the Controller to trace payments made to the Motel or determine the Motel's gross income. *Id.* at 243-44. ET paid the Motel approximately $270,000 for room rentals over the course of 16 months. N.T., 5/17/17, at 194.

Harrington testified Mr. Kendall (ET's representative)[1] initially approached her about renting five of the Motel's rooms for employees of ET. N.T., 5/25/17, at 272-73. Over time, Kendall increased the number of rooms he wished set aside for ET's employees. *Id.* at 277. Kendall paid weekly for the rooms by credit card. *Id.* at 279.

Harrington testified she had credit card receipts to substantiate payment, but she was not asked to provide them during the January 26, 2015 records review. *Id.* at 296. Harrington stated she began waiving payment for rooms set aside for ET but unoccupied by its employees, because she and ET had an understanding that those rooms could be rented to other customers. *Id.* at 281. Harrington maintained she could have charged ET for the unoccupied rooms, but chose not to as a courtesy. *Id.* If a room committed to ET was rented to another patron and ET subsequently required that room, Harrington would refund the patron's money and move that person to a room at a nearby motel. *Id.* at 291-92.

---

[1] Kendall worked as a superintendent for ET's western Pennsylvania hydrofracking services. N.T., 5/19/17, at 8. One of his duties in this position was to make lodging arrangements for ET's employees. *Id*

Kendall testified by deposition regarding the arrangement ET had with the Motel. He made arrangements with Harrington to set aside a certain number of rooms at the Motel. *Id.* at 9. ET was willing to pay for rooms, occupied or not, because it was difficult to find rooms in the area. *Id.* at 10.

Kendall prepared and signed expense reports to keep track of how many rooms were available for ET's employees and the rates paid to rent the rooms.[2] N.T., 5/17/17, Ex. No. 8. These reports indicate the number of rooms rented on a weekly basis, the rate charged, the occupant of each room, and the total amount paid to the Motel by ET. *Id.* Every expense report after December 28, 2012 demonstrates ET paid only for rooms actually occupied by its employees. *Id.*

Kendall agreed to occasionally "surrender" one of the rooms so Harrington could rent it to another guest. *Id.* at 14, 32. He understood that, if ET needed that room, Harrington would move the guest to another room or motel for the night. Notwithstanding the expense reports, Kendall maintained he was obligated to pay for the rooms, regardless of whether ET employees actually occupied them. *Id.* at 15. He believed the rooms ET used were under contract for a year. *Id.* at 21.

### 2. Treasurer's Evidence

Tax Manager testified that the permanent resident exemption is inapplicable if there is a break in payment during the period of occupancy. N.T., 5/17/17, at 42. However, as long as a resident is paying for the room, actual occupancy of the room is not required. *Id.* at 43. A permanent resident's entire stay is exempt from the Hotel Tax unless there has been a break in payment. *Id.* at 48-49.

---

[2] The expense reports do not document every week during which ET rented rooms. Kendall testified that he first rented rooms in June 2012, however, the first report is dated July 18, 2012. A gap of more than five months exists between the July 18, 2012 report and the subsequent one dated January 2, 2013.

Auditor 2 testified she examined the Motel's records over an approximate three-week period in April and May of 2016. *Id.* at 66. Due to the imprecision of the Motel's records, Auditor 2 experienced significant difficulty balancing the daily revenue reports with the monthly revenue reports. *Id.* at 68. Many records were either missing or incomplete. *Id.* at 91. Dodd's method of reporting revenue also changed from quarter to quarter, which further complicated the analysis of the Motel's records. *Id.* at 74. Of the records which covered the period from April 2011 through September 2014, Auditor 2 was only able to balance five monthly revenue reports with their corresponding daily revenue reports. *Id.* at 75.

To determine the number of rooms rented by ET that were exempt from the Hotel Tax, Auditor 1 generated a spreadsheet which identified the rooms occupied and the dates of occupancy. *Id.* at 121-22. Actual occupancy of a room was unnecessary, as long as payment for the room was evidenced by the Motel's records.[3] *Id.* at 123. Further, occupancy by the same individual was not required for 30 consecutive days as long as ET paid for the room. *Id.* at 164. Auditor 1 stated her office was lenient and reviewed any documentation provided to try to substantiate the tax-exempt status of a given stay. *Id.* at 131-32. However, Auditor 1 interpreted the relevant ordinance provisions to require a written contract exist before tax-exempt status was granted for the first 30 days of any stay. *Id.* at 157. Because no written contract existed between ET and the Motel, tax-exempt status was disallowed for the first 30 days of each stay. *Id.*

---

[3] This testimony appears to conflict with Auditor 1's testimony before the arbitrator that the Controller required records to substantiate a patron "did in fact stay 30 days." N.T., 4/14/15, at 72.

### 3. Trial Court Decision

After summarizing the relevant testimony, the trial court found that a legally enforceable contract existed between ET and the Motel. Trial Ct. op. at 4. The trial court further found Dodd presented sufficient evidence to establish the permanent resident exemption applied to all money paid by ET to the Motel. *Id.* Consequently, no tax, penalty, or interest should have been imposed by the Treasurer, and no moneys were owed by the Motel to the Treasurer. *Id.* at 4-5. This appeal by the Treasurer followed.

## II. Issues

On appeal,[4] the Treasurer argues that the trial court erred in concluding a legally enforceable contract existed between ET and the Motel. The trial court also erred in determining no tax was owed, as the evidence, including Dodd's own testimony, established the Motel owed Hotel Tax. The Treasurer requests this Court vacate the trial court's order and remand this matter to the trial court for entry of judgment in the amount of $48,270.14 in delinquent Hotel Taxes, plus interest.

## III. Discussion

The Treasurer argues that the permanent resident exemption requires 1) a legally enforceable contract; 2) occupancy or right to occupancy for 30 consecutive days; and 3) actual uninterrupted occupancy for 30 consecutive days.[5] The Treasurer

---

[4] This court's review is limited to determining whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. *Downingtown Area Sch. Dist. v. Chester Cty. Bd. of Assessment Appeals*, 131 A.3d 152, 156 n.4 (Pa. Cmwlth. 2015).

[5] We disagree with the Treasurer's characterization of the residency requirement. A plain reading of Section 475-8(B) establishes that 30 days of actual uninterrupted occupancy is not required before the permanent resident exemption applies. Rather, pursuant to the terms of a

concedes that if Dodd had produced adequate records establishing the existence of a contract between the Motel and ET, supported by the payment of rent and evidence of uninterrupted occupancy, the consideration received by ET would be exempt from the Hotel Tax. However, the Treasurer maintains the evidence of record does not establish the existence of a legally enforceable contract.[6] As such, in the absence of a written contract, the Motel has only established the existence of a promise by ET to rent an unknown number of rooms for an unspecified period at an undetermined rate. ET was not legally bound to pay for any rooms beyond those it actually occupied. Moreover, because certain rooms were not used or paid for by ET, and were subsequently rented out to other patrons, ET's use of the rooms was not continuous.

The Motel responds that ET had a legally enforceable contract to occupy 13 rooms for at least one year. ET was required to pay for these rooms whether or not they were occupied. The waiver of payment for some rooms as a courtesy did not eliminate ET's obligation to pay for those rooms. Further, the fact that ET paid for the rooms it rented on a weekly basis did not relieve ET of the obligation to rent those rooms for at least a year.

Section 475-8(B) of the Ordinance relevantly provides the following definition in regards to the permanent resident exemption:

---

legally enforceable contract, an occupant need only have the *right* to occupy a room for 30 consecutive days and be legally bound to pay for the room.

[6] Notably, the Treasurer's request for relief conflicts with its assertion that no enforceable contract existed. The amount of the judgment sought, $48,270.14 plus interest, was based on an assumption that a contract existed and the Motel was entitled to the permanent resident exemption for a portion of ET's rentals.

10

**[A] permanent resident is a person who has occupied or has the right of occupancy of any room or rooms in a hotel as a patron or otherwise for a period exceeding 30 days.** Therefore, the following applies to the definition of a permanent resident.

(1) **After a person has occupied or had the right to occupy for 30 consecutive days, he is no longer an occupant who is subject to the hotel tax. His status as a permanent resident is effective for the rental period during which, or at the expiration of which, the 30 consecutive days or occupancy is completed, and continues thereafter so long as his occupancy remains continuous and uninterrupted.** Thus, if a person completes his thirtieth day of consecutive occupancy during, or at the expiration of, a particular rental period, he is a permanent resident for the entire rental period[,] even though during a part of the period he has not yet established his status as a permanent resident . . . .

(2) **A "rental period" for the purposes of these regulations is a period of time during which, under and subject to the terms of the legally enforceable contract, an occupant has a continuous right to occupy a room or rooms in a hotel and is legally bound to pay rent therefore.** A mere statement of intention to occupy, or to permit occupancy, on the part of an occupant or hotel operator, or both, does not create a rental period unless the period in question is the subject of a legally enforceable contract.

(3) The occupancy or right of occupancy must be for 30 consecutive days. A person who merely has the right to use a room on intermittent days of the week or month cannot become a permanent resident, even though he cumulatively occupies for more than 30 days.

(4) **The status of a permanent resident only continues so long as the occupancy or right of occupancy continues uninterrupted. A**

11

**continuing occupancy loses his status as a permanent resident and, with respect to his next occupancy, does not resume his status as a permanent resident unless and until he again completes 30 consecutive days of occupancy.** A transfer from one hotel to another (even though both hotels are owned by the same operator) is a break in occupancy. A mere change of rooms, however, in the same hotel is not a break in occupancy.

Ordinance, Section 475-8(B) (emphasis added) (alterations added) (quotation marks omitted).

The Treasurer does not dispute that an oral contract may be sufficient and legally enforceable. However, he insists the evidence fails to substantiate the Motel's assertion that a legally enforceable contract existed. Where a contract is not evidenced by a written document, but rather "partly or wholly composed of oral communications, the precise content of which is not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain the intent of the parties." *Westinghouse Elec. Co. v. Murphy, Inc.*, 228 A.2d 656, 659 (Pa. 1967) (internal citations omitted). Accordingly, we look to the parties' course of conduct to determine whether a legally enforceable contract existed.

The records of the Motel are clearly inadequate and incomplete. However, based on the parties' course of conduct, the trial court did not err in finding that an enforceable oral contract existed between ET and the Motel. While the record does not establish the specific number of rooms ET would require, it is clear ET anticipated renting several rooms from the Motel for at least a year. Kendall initially rented five rooms "to start with, and then just however many we could get . . . ." N.T., 5/19/17, at 7. His expense reports evidence rental of, and payment for, rooms

12

from late December 2012 through mid-October 2013. The spreadsheet drafted by the Controller indicates ET rented rooms from mid-June 2012 through mid-October 2013. Although there are gaps in the Controller's timeline where the Motel's records could not establish continuous occupancy by ET's employees, it is clear the Controller was satisfied that ET did, in fact, rent and pay for several rooms at the Motel throughout that period, and payments for some rooms were deemed exempt from the Hotel Tax.

Next, the Treasurer argues the trial court erred in finding the Motel owed no taxes. The Treasurer asserts this conclusion directly conflicts with the testimony of Dodd, who acknowledged that Hotel Tax was due for rooms occupied by patrons unrelated to ET.

The Motel responds that this argument is waived, as the Treasurer is requesting the imposition of Hotel Tax for rooms occupied by patrons other than ET and this issue was not raised before the trial court. The Motel further argues the trial court was correct in determining no Hotel Tax was owed by Dodd, as the evidence establishes ET continuously occupied the rooms and the permanent resident exemption applied to those rooms.

As to the Motel's waiver argument, we disagree that the Treasurer failed to raise before the trial court the issue of Hotel Taxes owed for rooms rented by non-ET patrons. The amount of Hotel Tax originally assessed by the Controller included taxes from rooms rented by ET and other patrons. As such, the issue of the Hotel Tax owed by the Motel generally was before the trial court. The Treasurer is appealing the trial court's determination that no tax was owed. That determination encompasses the Hotel Tax owed for rooms rented by other patrons. Therefore, the issue is properly before this Court.

13

We agree with the Treasurer that the trial court erred in determining no taxes were owed. First, Dodd acknowledged that Hotel Taxes were owed for room rentals to patrons not associated with ET. The period subject to audit was from January 1, 2010 through March 31, 2014. At the earliest, ET began occupying rooms at the Motel in June 2012, more than two years into the audit period. Furthermore, ET's occupation of these rooms is only exempt from payment of the Hotel Tax if its occupancy, or right to occupancy, was continuous. In establishing continuous occupancy, or the right to continuous occupancy, Section 475-8(G)(1) of the Ordinance provides:

> [t]he burden of proving that the rent or occupancy received is not taxable is upon the operator and the operator must demonstrate same through accurate records. In any case where a hotel operator fails to maintain adequate records as required under this regulation, **any room for which there is not adequate records shall be deemed to have been occupied for the entire period for which the supporting records are lacking.**

Ordinance, Section 475-8(G)(1) (emphasis added).

Dodd, Harrington, and Kendall all testified that ET had the right to occupy rooms for which it did not pay, and payment could have been required for the unoccupied rooms. However, the practice of the parties after December 2012 was to waive payment for unused rooms so they could be rented to other occupants whenever possible. This practice continued for 10 months. Problematically, the Motel's waiver of payment creates yet another gap in the record which might otherwise substantiate the Motel's assertion that ET's occupancy of the Motel's rooms was continuous such that the entire sum paid by ET to the Motel should be exempt from the Hotel Tax.

14

The Motel has adequately demonstrated it had an oral contract with ET to rent an unspecified number of rooms for at least a year. We acknowledge the testimony of Dodd, Harrington, and Kendall that ET had the continuous right to occupy the Motel's rooms, regardless of whether ET, in fact, paid for those rooms. Testimony is not sufficient, however, *as the Ordinance requires that a right to the exemption be demonstrated through records maintained by the Motel*. It is entirely possible that the Motel can substantiate *with supporting records* ET's continuous right to occupy, but we are unable to draw such a conclusion based on the original record filed with this Court. As such, the trial court's conclusion that no taxes were owed by the Motel is not supported by substantial evidence.

Although we agree the trial court erred in concluding the Motel owed no Hotel Tax, we cannot conclude that the amount calculated by Auditor 1 is correct, either. Auditor 1 testified that, based on her interpretation of the Ordinance, in the absence of a written contract between ET and the Motel, tax-exempt status was disallowed for the first 30 days of any stay. This interpretation is not supported by the relevant section of the Ordinance. Under its explicit language, "if a person completes his thirtieth day of consecutive occupancy during, or at the expiration of, a particular rental period, *he is a permanent resident for the entire rental period* (even though during a part of the period he has not yet established his status as a permanent resident)." Ordinance, Section 475-8(B) (emphasis added) (alterations added) (quotation marks omitted). The rental period must be subject to the terms of a legally enforceable contract, however, there is no requirement that the contract be written.

## IV. Conclusion

It is clear the Motel did itself no favors in utilizing accounting methods that were, at best, haphazard. While it appears the Motel and ET operated pursuant to the terms of an enforceable oral contract, the expense reports created by Kendall do not cover the entire rental period and there were admitted breaks in payment. As Dodd testified the Motel owed some amount of Hotel Taxes, the trial court's finding to the contrary is not supported by substantial evidence. The amount of that tax, however, cannot be discerned from the original record filed with this Court. Accordingly, we are constrained to vacate the order of the trial court and remand this matter to the trial court for a new determination of the Hotel Tax due and owing from the Motel.

_____
ELLEN CEISLER, Judge

Judge Brobson did not participate in the decision of this case.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Erma S. Dodd d/b/a Fort Pitt Motel   :
                                      :
            v.                         :   No. 1470 C.D. 2017
                                        :
County of Allegheny, Office of     :
Treasurer,                          :
                  Appellant      :

## **O R D E R**

AND NOW, this 1st day of August, 2019, the September 21, 2017 order of the Court of Common Pleas of Allegheny County is hereby VACATED and this matter is remanded for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

 

 

_____

ELLEN CEISLER, Judge